SOMERVILLE PINKNEY, *Administrator of* THOMAS H. LUCK-
ETT *vs.* JAY, MASON AND OTHERS.—*December*, 1841.

The language of the act of 1795, chap. 88, discriminates between a proceed-
ing *before*, and *after*, a decree, against a non-resident defendant.

Before the decree has passed, the language authorizing the action of the
court is broad and comprehensive. It is, there shall in all respects be the
same proceedings *before* a decree, as if the defendant had appeared regu-
larly on the return of a subpœna.

After the decree has passed, the language is more restricted, and clearly war-
rants nothing more than a review of the decree itself, according to the
established principles of equity, and as if the party had appeared.

A bill of review is the appropriate remedy to correct or alter a decree either
for error apparent, or by reason of the discovery of new and relevant
matter after the decree has passed. An original bill is never proper to
be resorted to, except where the decree is to be impeached on the ground
of fraud.

After a decree has been affirmed upon appeal, no bill of review would pro-
perly lie for error apparent on the face of the decree. The exercise of such
a jurisdiction by the Court of Chancery would be subversive of that subor-
dination which has been established by the Constitution of the State.

A bill of review which would lie in such a case, must be founded upon new
matter discovered since the decree, and in that sense the opinion of the
court in 10 Gill & John. 497, is to be understood.

Upon a bill sworn to before a Justice of the Peace in the District of Colum-
bia, who was certified to be such Justice by the Secretary of State for the
United States, under his seal of office, the Chancellor granted an
injunction.

APPEAL from the Court of Chancery.

This cause had been before the court at December, 1839,
and is reported in 10 *Gill & John.* 480, as the case of *Luckett
against White, et al.*

On the 29th June, 1840, the Chancellor, (BLAND) upon
the opinion of this court, 10 *Gill & John.* 497, passed the fol-
lowing order:

On consideration of the foregoing petition and of the opin-
ion of the judges of the Court of Appeals therewith exhi-
ted, it is ordered in pursuance of the said opinion, that the
said petitioners have leave to file their said bill of complaint,
and that an injunction issue as thereby prayed upon, an in-

junction bond, in the penalty of two thousand dollars, with surety, to be approved by the Chancellor, being filed with the register, as prayed by the said petition.

And thereupon the said petitioners filed in the said cause their bill of review in the words following, to wit:

The bill of review of *Peter Augustus Jay* and *Betsy C. Mason*, and of *Betty Mason, Matilda Eulalia Mason, Ann Grahame Mason, Thomson F. Mason, John Francis Mason, Virginia Mason, Caroline Morris Mason, Arthur Pendleton Mason* and *Clapham Mason*, who are infants under the age of twenty-one years, by the said *Betsy C. Mason*, their mother and next friend, humbly shows: That heretofore, to wit, on the twenty-seventh day of June, in the year eighteen hundred and twenty-five, a certain *Thomas H. Luckett* filed his bill of complaint in this court against certain *Otho H. W. Luckett, Valentine P. Luckett, Samuel Clapham and Daniel Trundle*, wherein it is amongst other things alleged, that one *Thomas H. Luckett* who is therein represented to have been the father of the complainant and of the defendants *Otho* and *Valentine*, being seized in his demesne as of fee of the several tracts or parcels of land lying in *Montgomery* county, in this State, that is to say, of a tract called *Conjurers' Disappointment*, &c., &c., did on the 27th December, in the year 1786, duly make and publish his last will and testament in writing, and did thereby devise the said tracts called *Conjurers' Disapppointment*, &c., unto the said *Valentine P. Luckett*, and the said tract called the *Resurvey on Discord*, to the said *Otho H. W. Luckett*, upon the express condition that each of the said devisees should pay unto the said complainant, who it is averred is the younger brother mentioned in the will as not yet baptized, the sum of one hundred pounds, current money of the Commonwealth of *Virginia*, and that by said will the said devises were made subject to one other devise in said will contained, whereby the said lands and all other real estate of the testator were devised to the testator's wife *Elizabeth Luckett*, during her sole and unmarried life, and that the said *Elizabeth*, who it is also charged was the complainant's mo-

ther, survived her aforesaid husband, and continued to live a sole and unmarried life until the time of her death, which took place about the year 1817, and that in the year 1805, the said *Elizabeth* executed to her sons the said *Valentine* and *Otho,* separate deeds of release and acquittance, by which she relinquished to them her right and title to said tracts or parcels of land so as aforesaid devised to them by their said father. And that the considerations mentioned in said deeds as having been paid by the said *Valentine* and *Otho* were merely nominal, and that in fact nothing was paid by them to their said mother on account thereof; but that said deeds were executed for the purpose of enabling them to sell their said lands to the defendant *Clapham*, in execution of an agreement before that time made, and in consummation of which, deeds were accordingly executed on the same day, and that the said *Clapham* at the time of said purchases, had notice of the claims of the complainants on said lands, and that afterwards payment thereof was demanded by the said complainants of the said *Clapham*, and that sundry negotiations took place between them in relation thereto, as is more fully stated in said bill; and that afterwards the said *Clapham* sold and conveyed said lands unto the defendant *Trundle,* who had at the time notice of the said claims of the complainant, and by said bill the said complainant prayed a decree for a sale of said lands, or so much thereof as may be necessary to pay him said legacies with interest, and such other relief in the premises as he might be justly entitled to; and also that an order of publication might issue in the usual form against the said *Otho, Valentine* and *Clapham,* who it is therein alleged resided out of the State of *Maryland*, and that a subpœna might be issued against the said *Trundle*, and so forth. And your orators further shew, that an order of publication was passed in compliance with the prayer of said bill against the said absent defendants, *Otho H. W. Luckett, Valentine P. Luckett* and *Samuel Clapham,* and process of subpœna was issued against the said *Daniel Trundle*, and that such other proceedings were had. That afterwards the said *Clapham* and *Trundle* filed their an-

swers to the said bill of complaint; but before the other defendants, *Otho H. W. Luckett* and *Valentine P. Luckett*, had answered or appeared to said suit, that is to say, on the twenty-sixth day of February, in the year eighteen hundred and twenty-nine, the said complainant filed in the cause his bill of amendment, supplement and revivor, against the said *Otho H. W. Luckett*, *Valentine P. Luckett*, and also *Elizabeth Clapham*, *James B. Murray* and *Eliza Thompson*, and one *Eliza Ratcliffe*, who, as your orators believe, is a fictitious personage, and your orator, *Peter Augustus Jay*; and therein amongst other things it is charged that the said *Samuel Clapham*, named in the aforesaid original bill, had departed this life pending this suit, and that he left no heir nor any representative other than his widow, the aforesaid *Elizabeth Clapham*, and that the said original bill did untruly state that the said *Samuel Clapham* had conveyed unto the said *Trundle* all the lands which he had acquired by conveyance from the said *Otho* and *Valentine*, and that in fact the said *Samuel Clapham* conveyed unto the said *Trundle* the tract or parcel of land called *Resurvey upon Discord*, and that on the seventeenth day of June, in the year 1824, the said *Clapham* conveyed unto the said *James B. Murray* the lands called *Conjurers' Disappointment*, *Georgia*, and *Gleanings*, in trust, to sell the same for payment of a certain debt due from said *Clapham* unto one *James Thompson*, as is therein more fully stated. And that afterwards the aforesaid lands were sold by the said *James B. Murray* unto the said *Eliza Thompson*, *Peter Augustus Jay* and *Eliza Ratcliffe*, executors of the said *James Thompson*, and conveyed unto them by deed dated on the ninth day of June, in the year 1828, and that the said *Murray* at the time of execution of said deed of trust, and the said *Eliza Thompson*, *Peter Augustus Jay* and *Eliza Ratcliffe*, at the date of the deed unto them from the said *Murray*, had notice of the claims of the said complainant as aforesaid. Whereupon the said complainant prayed relief by a decree for a sale of the aforesaid premises for payment of his said claims, unless the defendants or some of them should pay his aforesaid demands,

and for general relief, and so forth. And also for an order of publication in the usual form, against the said *Otho H. W. Luckett, Valentine P. Luckett, Elizabeth Clapham, James B. Murray, Eliza Thompson, Peter Augustus Jay* and *Eliza Ratcliffe,* who are therein alleged to reside out of the State of *Maryland.* And your orators further charge, that an order of publication was accordingly passed against said defendants, and that afterwards, by a decree passed in the cause on the ninth day of October, in the year 1829, it was adjudged, ordered and decreed that the aforesaid original bill of complaint be taken *pro confesso* against the defendants *Otho H. W. Luckett* and *Valentine P. Luckett,* and that the aforesaid bill of amendment, supplement and revivor be taken *pro confesso* against said defendants *Otho H. W. Luckett* and *Valentine P. Luckett,* and the defendants *Elizabeth Clapham, James B. Murray, Eliza Thompson, Peter Augustus Jay* and *Eliza Ratcliffe.* And your orators further charge, that afterwards, on the eighth day of May, in the year eighteen hundred and thirty-two, the said complainant filed his bill of revivor in said cause against certain *Benjamin Shrieve, junior,* and *Mary Elizabeth,* his wife, and *Stephen White* and *Ann,* his wife; and therein amongst other things it is suggested, that the said *Daniel Trundle* had departed this life, leaving said *Mary Elizabeth* and *Ann,* his heirs at law, and it is thereby prayed that the said suit which had abated by the death of the said *Trundle,* might be revived against the said defendants in said bill of revivor named. And your orators further charge, that such other proceedings were had in said cause, that afterwards, to wit, on the tenth day of October, in the year 1837, a decree was passed whereby the bill of complaint of the complainant was dismissed with costs, and so forth, as by the said decree and other the proceedings now remaining in this court will more fully appear. And your orators further charge, that the said complainant appealed from said decree, to the Court of Appeals for the Western Shore, which was so proceeded in, that on the thirtieth day of January, in the year 1840, a decree was passed by said court, whereby the decree

of this court, so far as it dismissed the complainant's bill of complaint against the said *Valentine P. Luckett, Elizabeth Clapham, James B. Murray, Eliza Thompson, Peter Augustus Jay* and *Eliza Ratcliffe,* is reversed with costs to the said complainant in the said Court of Appeals, and in this Court of Chancery; and it is thereby amongst other things further adjudged, ordered and decreed, that the said tracts called *Conjurers' Disappointment, Georgia,* and *Gleanings,* or so much thereof as may be necessary to pay the complainant the sum of three hundred and thirty-three dollars and thirty-three and a third cents, with interest thereon from the twelfth day of February, in the year seventeen hundred and eighty-eight, until paid, together with costs as aforesaid, be sold, unless the said defendants shall pay to the said complainant, or bring into the Court of Chancery, to be paid unto him, the aforesaid principal sum of money, with interest and costs, on or before the first day of July next, and a trustee is thereby appointed to make said sale, and the cause is remanded to this court, with power to your honor to pass such order and decrees as may be necessary to carry the said decree into effect, as by a copy of said decree which is filed in this cause, will more fully appear. And your orators further charge, that all the interest and estate which the aforesaid bill supposes, were vested in your orators *Peter Augustus Jay* and the said *Eliza Ratcliffe;* and the said *Eliza Thompson* had become beneficially transferred to and vested in your orators *Betsy C. Mason, Betty Mason, Matilda Eulalia Mason, Ann Grahame Mason, Thompson F. Mason, John Francis Mason, Arthur Pendleton Mason* and *Clapham Mason,* prior to the date of the decree last aforesaid, and that thereby the said last named complainants are and ought to be treated as representing your aforesaid orators, *Jay* and the said *Ratcliffe,* to the extent of said interest; and that nevertheless as your orators *Jay* and the said *Ratcliffe* are made personally responsible for costs as aforesaid, the said *Jay* is really and individually aggrieved by the aforesaid decree, and have a right to require a review thereof, as well for his own protection as in behalf of his afore-

said co-complainants. And your orators do further charge, that the said *Jay* and the said *Ratcliffe*, if she had any existence at the time of commencing said suit, were and thenceforth continually have been and now are residents of the State of *New York*, and are not, nor have been during any portion of said time, residents of the State of *Maryland;* and that your orators *Betsy C. Mason* and her aforesaid children, have not at any time during the pendency of said suit, resided, and do not at this time reside in the State of *Maryland;* and inasmuch as eighteen months have not elapsed since the date of the aforesaid decree, by which your orators are aggrieved, they are advised and do most respectfully insist and require a review of the aforesaid decree, and pray that your honor will proceed to an examination of the matters in dispute in said suit, and to a final decree therein, in the same manner as if your orators had originally appeared, and by their answer had insisted upon their defences to said suit. And your orators pray leave to rely on all the matters of objection to the claim of the said complainant which are disclosed by the aforesaid bill or bills of complaint of the said complainant; and more especially do they insist that the said bill or bills of complaint are inconsistent in this, that they blend together separate and distinct causes, or pretended causes of action, or suits, against these complainants, with other separate and distinct causes, or pretended causes of action, against other defendants to said suit. Whereas your orators are advised and insist, that the said complainant ought to have brought one suit against the said *Otho H. W. Luckett*, and the person or persons who claim the lands which were devised to him by the supposed last will and testament of his aforesaid father *Thomas H. Luckett*, for recovery of the legacy or sum which is supposed to have been charged on said lands by the said last will and testament; and one other suit against the said *Valentine P. Luckett.* And your orators, or such other person or persons as were supposed by the said complainant to have or to claim an interest in the lands which were supposed to have been devised by the aforesaid pretended last will and testament of

his.aforesaid father *Thomas H. Luckett*, unto the said *Valentine*, for recovery of the legacy or sum which is supposed to have been charged on said lands by the said supposed last will, and testament, and they pray they may have the same benefit of this objection as if they had appeared originally to said suit, and by due form of pleading relied thereon. And your orators further say, that they have no personal knowledge of the execution of the aforesaid supposed last will and testament, and cannot admit nor deny its execution; but they are advised and so insist, that the proofs which were adduced by the said complainant are not competent and sufficient to establish its making and publishing in due form of law, and they claim the benefit of such deficiencies, and leave the complainant to offer such further evidence in support of the averments in said bill in relation to the execution of said last will and testament as he may think proper; and if the said complainant should adduce any competent and sufficient evidence of the execution of the aforesaid last will and testament, and of the original existence of his demand as aforesaid, your orators will insist and do now charge, that from the very great lapse of time since it is supposed the said claim originated, it ought to be presumed that the same hath been paid or satisfied. And your orators do pray leave to insist on the limitations of time as aforesaid, as a defence and bar in this court against the claim of the complainant so as aforesaid pretended against the lands now claimed as aforesaid by these complainants. Your orators hereby denying all knowledge of the treaties or negotiations which are by the aforesaid original bill pretended to have taken place between the complainant and the said *Samuel Clapham*, in relation to his aforesaid pretended claims, or of the age of the complainant at the present or at any preceding period. And your orators also aver, that after they had acquired title to the aforesaid lands, as is stated in the said original bill of complaint, and in this bill, they heard that the said complainant pretended that he had a claim against the aforesaid lands, founded upon the devises supposed to be contained in the last will and testament of said

*Thomas H. Luckett ;* but at the same time they heard and understood that said claim had been paid or satisfied, and relinquished, released or abandoned, by the said complainant to the said *Valentine P. Luckett.* And your orators do therefore insist that the said claim, if it ever really existed, which is by no means admitted, has been a long time ago paid or satisfied by the said *Valentine P. Luckett,* or some other person on his behalf, unto the said complainant, and that in consequence thereof, the same hath been released, relinquished or abandoned by him, and they pray to have the same benefit of the aforesaid defences and of the proofs which may be adduced in support thereof, as if they had originally appeared to the cause and relied on the same. And your orators further charge, that on or about the thirteenth day of August, in the year 1810, the said *Valentine P. Luckett* applied to *Frederick* county county, as a court of equity, for the benefit of the act passed for the relief of sundry insolvent debtors and its supplements, and that he was finally discharged on said application, and that the said complainant assented to his discharge. Of this fact your orators obtained knowledge a long time after they acquired their interests in said lands as aforesaid, and your orators are advised and insist that the said release, with the assent of the said complainant, is not only evidence that the said complainant had abandoned his claims, if any he ever had against the aforesaid lands, and looked exclusively to the said *Valentine* for payment thereof; but that the same in equity will be construed to operate as a release in favor of your orators of any lien or charge which the said complainant ever had therein under color of his aforesaid pretended claim. And your orators are further informed and charge, that the complainant gave his consent to the discharge of the said *Valentine* at the instance and solicitation of the said *Elizabeth Luckett,* his mother, and upon her undertaking to pay him the amount of his claims against the said *Valentine ;* that the said *Elizabeth* was at that time a lady of considerable property, and that she left property at the time of her death in value more than adequate to the payment of the aforesaid pretended

claim, which upon her death, came into the hands of the said complainant as executor, administrator or otherwise, out of which he might have satisfied himself for his aforesaid demand, if in fact the same was not satisfied unto him by his said mother in her lifetime, as your orators have reason to believe it was. And your orators further charge, that the said *Samuel Clapham* purchased the aforesaid lands of the said *Valentine* some time in or about the year eighteen hundred and five, for a full and valuable consideration at the time, paid by the said *Clapham* to the said *Valentine,* as by a copy of said conveyance filed in the cause as one of the exhibits of the said complainant will appear. And your orators are credibly informed and verily believe, that at the time of making such purchase and taking a conveyance therefor as aforesaid, the said *Clapham* had no notice whatsoever of the claim of the said complainant, now pretended against the aforesaid lands, and that immediately after the making of said conveyance, the said *Clapham* entered upon said lands and thenceforth continually held them until on or about the seventeenth day of June, in the year 1824, when he sold and conveyed the same unto the said *James B. Murray,* for a full and valuable consideration, as by a copy of said conveyance filed by the complainant in the cause will appear; and that for the greater portion of the time between the said conveyances, he was ignorant of the aforesaid pretended claims of the complainant, and from the time he received notice thereof, he continually denied their existence and his obligation in law or equity to discharge them. And your orators further charge, that they are informed and believe, that at the time of taking the conveyance as aforesaid from the said *Clapham,* the said *Murray* had no notice whatsoever of the aforesaid pretended claims of the complainant, and that afterwards, to wit, on the twenty-fifth day of July, in the year 1828, the said *Murray* sold and conveyed the said lands unto *Eliza Thompson,* in said bill named, one *Peter W. Ratcliffe,* and your orator *Peter Augustus Jay,* as joint tenants, for a full and valuable consideration by them paid to him, as by a copy of said conveyance filed by the said complainant in

the cause will appear; and that at the time of taking the said conveyance, the said *Thompson*, *Ratcliffe* and *Jay*, had no notice whatsoever of the aforesaid pretended claims of the complainants. And your orators *Betsy C. Mason*, *Betty Mason*, *Matilda Eulalia Mason*, *Ann Grahame Mason*, *Thompson F. Mason*, *John Francis Mason*, *Virginia Mason*, *Caroline Morris Mason*, *Arthur Pendleton Mason* and *Clapham Mason*, charge that they have acquired beneficially all the interest and estate of the said *Eliza Thompson*, who is since deceased, *Peter W. Ratcliffe* and *Peter Augustus Jay*, in and to the aforesaid premises, and that at the time of acquiring such interest and estates therein, they had no notice whatsoever of the aforesaid pretended claims of the complainant, although they admit said suit was depending at the time; and they are advised and so insist, that they are entitled as assignees as aforesaid by mesne conveyances from the said *Clapham*, to rely on the want of notice of the aforesaid pretended claims, as well to the said *Clapham* and *Murray* as to the said *Thompson*, *Ratcliffe* and *Jay*. And your orators further charge, that the said *James B. Murray* acquired his title in the aforesaid lands prior to the filing of the original bill of the complainant, yet he was not made a party thereto. And that before the time of filing the aforesaid bill of amendment, supplement, and revivor, the said *James B. Murray* had conveyed the aforesaid premises unto the said *Eliza Thompson*, *Peter W. Ratcliffe* and *Peter Augustus Jay*, yet that the said *Peter W. Ratcliffe* was not made a party to said bill, nor to any of the subsequent proceedings in the cause. And your orators are advised that the said *Peter W. Ratcliffe* was not barred by the aforesaid decree or other proceedings in said suit, and that consequently such interest and estate in the aforesaid premises as your orators *Betsy C. Mason*, *Betty Mason*, *Matilda Eulalia Mason*, *Ann Grahame Mason*, *Thompson F. Mason*, *John Francis Mason*, *Virginia Mason*, *Caroline Morris Mason*, *Arthur Pendleton Mason* and *Clapham Mason*, acquired under the said *Peter W. Ratcliffe*, must remain unprejudiced by the said decree and other the aforesaid proceedings, and that as repre-

senting the said *Ratcliffe,* your orators last named were material and necessary parties to said suit. And your orators further charge, that the said complainant as well as the said *Valentine P. Luckett,* resided out of the State of *Maryland.* To the end, therefore, that the said *Thomas H. Luckett* and *Valentine P. Luckett* may answer the several matters and things hereinbefore stated, and that the decree aforesaid may be reviewed and opened, and that the cause may be examined and determined, as if your orators had originally appeared thereto, and that it may be declared that the said *Thomas H. Luckett* hath no claim whatsoever against the premises now held by your orators, and his aforesaid bill of complaint may be dismissed, and that your orators may have such other relief as their case may require, and in the mean time that execution of the aforesaid decree may be stayed and enjoined. May it please your honor to grant unto your orators an *order of publication* in the usual form, giving notice to the said *Thomas H. Luckett* and *Valentine P. Luckett,* of the substance and object of this suit, and warning them to appear in this court to answer the premises and shew cause, if any they have, why a decree ought not to pass as prayed; and that an injunction or order may be passed enjoining and restraining the said *Thomas H. Luckett* and the aforesaid trustee, *Somerville Pinkney,* from selling the aforesaid lands, or in any other manner proceeding to execute said decree without the further order of this court; and as in duty, &c.

THOMAS S. ALEXANDER, *for Compl'ts.*

*District of Columbia, Washington County, to wit:* On this 19th day of June, in the year eighteen hundred and forty, before the subscriber, *Th. H. Hampton,* a justice of the peace for said county and district, personally appeared *Betsey C. Mason,* one of the complainants within named, and made oath that the matters stated in the foregoing bill are true, to the best of her knowledge and belief. TH. R. HAMPTON, *J. P.*

*United States of America, Department of State.* To all to whom these presents shall come, greeting: I certify that *Tho-*

*mas R. Hampton,* whose name is subscribed to the paper here-unto annexed, is now, and was at the time of subscribing the same, a justice of the peace for the county of *Washington,* in the District of *Columbia,* duly commissioned, and that full faith and confidence are due to his acts as such. In testimony whereof, I, *John Forsyth,* Secretary of State of the United States, have hereunto subscribed my name, and caused the seal of the Department of State to be affixed. Done at the city of Washington, this nineteenth day of June, (Seal.) A. D. 1840, and of the Independence of the United States of America, the sixty-fourth.

JOHN FORSYTH.

A bond was filed and approved by the Chancellor, an injunction was issued, and service admitted. Orders of publication against the absent defendants were passed and published. A bill of revivor, in consequence of the death of *Thomas H. Luckett,* was also filed, and his administrator, *Somerville Pinkney,* made a party to the cause, and having filed his answer, moved for a dissolution of the injunction. After hearing this motion, the Chancellor (BLAND,) continued the injunction until final hearing or further order; from which order the said *S. Pinkney,* administrator of *T. H. Luckett,* appealed.

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY and CHAMBERS, Judges.

By S. PINKNEY and J. JOHNSON for the appellants, and
By T. S. ALEXANDER for the appellees.

STEPHEN, J., delivered the opinion of the court.

Although the discussion in this case has been expanded over a large surface, and has involved within its range the entire merits of the original controversy, we think the true question presented for our consideration lies within a very narrow compass. The appeal has been taken from the order of the court below, continuing the injunction granted by the Chancellor, and upon the correctness and propriety of that order, it now

becomes our duty to decide. The bill filed, upon which the injunction was obtained, seeks to open the decree of this court, passed in the original cause, and to subject the merits of that decree to the examination and correction of a subordinate jurisdiction. We cannot suppose that it was the intention of the Legislature, when they passed the act under which this suit has been instituted, to authorize such a proceeding, as the exercise of such a jurisdiction, by an inferior tribunal, would present, and such was not the intention of this court, in the opinion expressed by them, when they spoke of the relief to be granted by the Chancellor, upon a proper application to be made to him for that purpose. The sound and proper construction of the law of 1795, chap. 88, will not warrant such a proceeding, nor is there any thing in the language of this court which was intended to give countenance to the idea, that they designed to open afresh, between the parties, the litigation in the original controversy. The language of the act of 1795 manifestly discriminates between a proceeding before, and after, a decree has taken place against a non-resident. Before the decree has passed, the language authorizing the action of the court is broad and comprehensive. It is, "there shall *in all respects* be the same proceedings *before* a decree, as if the defendant or defendants had appeared regularly on the return of a subpœna." *After* the decree has passed, the language is more restrictive, and clearly warrants nothing more than a review of the decree itself, according to the established principles of equity jurisprudence. The terms used, in substance are, that any person being a non-resident, against whom a decree shall be passed, may appear in the Chancery court within a limited period, "*and require a review of the same*," and the Chancellor shall proceed to an examination of the matters in dispute, and to a final decree, in the same manner as if the defendant had originally appeared; it was therefore evidently not the intention of the Legislature to give to the party the same latitude of controversy in both cases, but to limit and confine the party, after a decree had been made against him, to such remedial justice, as a technical bill of review might be

competent to afford; and to a defendant in default, such a proffered measure of relief, could, we think, afford no reasonable cause of complaint. It is moreover to be remembered, that according to the established principles of Chancery practice, a bill of review is the appropriate remedy to correct or alter a decree, either for error apparent, or by reason of the discovery of new and relevant matter, after the decree has been passed; and that an original bill is never proper to be resorted to, except where the decree is to be impeached on the ground of fraud. In conclusion, we will only further remark, that after a decree has been passed againt a non-resident in the Court of Chancery, and on appeal has been affirmed in this court, no bill of review would properly lie, for error apparent, on the face of the decree, as the exercise of such a jurisdiction by the Court of Chancery would be subversive of that subordination, which has been established by the judicial Constitution of the State. But the bill of review which would lie in such a case must be founded upon new matter discovered since the decree; in that sense it was the intention of this court to be understood, when the question was brought before them for their decision. The order of the Chancellor continuing the injunction is reversed, and the cause remanded for further proceedings.

ORDER REVERSED AND CAUSE REMANDED.